UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| OLIVIA SABIN PEABODY, | Case No. 3:21-cv-44 |
| *Plaintiff,* | |
| v. | MEMORANDUM OPINION |
| THE RECTOR AND VISITORS OF THE UNIVERSITY OF VIRGINIA, | Judge Norman K. Moon |
| *Defendant.* | |

**MEMORANDUM OPINION**

This matter comes before the Court on Defendant Rector and Visitors of the University of Virginia's (UVA's) motion to dismiss Plaintiff Olivia Sabin Peabody's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Dkt. 7. Peabody alleges that UVA failed to protect her from Andrew Hersey, a then-employee of the Fralin Art Museum at UVA who sexually harassed her during a nude modelling session in October 2016. (Dkt. 1). UVA has moved to dismiss the complaint, arguing, among other reasons, that the entire complaint is barred by a two-year statute of limitations. (Dkt. 7). Peabody responds that the Court should equitably toll the statute of limitations because UVA concealed evidence relevant to her claim and because she was incapacitated during the filing period. (Dkt. 12).

The Court will grant UVA's motion to dismiss and dismiss the case with prejudice because the complaint was filed after the two-year statute of limitations had run, and because equitable tolling does not apply.

**I. Background**

In early October 2016, Peabody, then an undergraduate art history major at UVA, saw a

1

flyer that Hersey had posted in Campbell Hall at UVA soliciting nude models. (Dkt. 1 at ¶¶ 29, 30).[1] She visited Hersey's website, which depicted a seated nude woman and included an ad offering to pay models $15-20 per hour for nude modelling sessions. (*Id.* at ¶ 30). She filled out an application, and Hersey responded the next day; they ultimately planned a modelling session for October 21, 2016. (*Id.* at ¶ 33). Hersey told Peabody that he had already booked a model for the group drawing session, and instead invited her to a "private session." (*Id.* at ¶ 33).

On October 21, 2016, Peabody went to the session at Hersey's studio near the UVA grounds. (*Id.* at ¶ 34). After she arrived, they discussed her background and expectations for the modelling session. (*Id.* at ¶ 35). Peabody undressed and began posing, initially sensing nothing out of the ordinary. (*Id.*). The first sign of something wrong occurred while Peabody was modeling with her back turned, when she thought that Hersey might have taken a picture of her on his phone without her knowledge. (*Id.* at ¶ 36). After that, Hersey asked Peabody to sit down with her legs spread open and one hand on her stomach; she complied, believing that it was a normal part of the modelling session. (*Id.* at ¶ 37). Then, Hersey began trying to engage in sexual conversation, despite Peabody's attempts to steer the discussion back to art. (*Id.* at ¶ 38). He asked her if she wanted to do erotic photography and explained in detail the sexual activities that he had photographed and drawn, showing her some of the explicit artwork. (*Id.*). Peabody sat nude on the modeling stage, stunned and frightened. (*Id.*).

Hersey asked Peabody to move to the couch for some reclined positions and asked her if she wanted to do erotic work during the current session. (*Id.* at ¶ 39). He moved her body into different positions, and placed her hand on top of her vagina, which she moved to cover herself from his gaze. (*Id.* at ¶ 40). Then, Hersey disrobed himself, telling Peabody that "I hope you

---

[1] For the purposes of the motion to dismiss, the facts in the complaint are taken as true. *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016).

don't mind. I really prefer to draw naked." (*Id.* at 41). As he continued to draw, he made moaning noises and sexual comments. (*Id.*). He told Peabody that having his models masturbate during their sessions excited him, that he had an erection, and that she could touch herself if she wanted. (*Id.*). When she did not respond in kind, he repeated his request, which she took as "more of a demand." (*Id.*). She believed that he was masturbating but did not open her eyes to look. (*Id.*).

In order to change the subject of the conversation, Peabody told Hersey that she liked a non-erotic drawing on one of the studio's walls. (*Id.* at ¶ 42). Hersey got up, still naked, retrieved the drawing, and, ostensibly to show her the drawing, approached her, positioning his genitals a few inches from her face. (*Id.* at ¶ 42). When she did nothing, he returned to his desk. (*Id.*).

When the session finished, Hersey put some money on a table, offered it to her, and asked her if she wanted to "hang out for a little bit." (*Id.* at ¶ 43). She refused, got dressed, and left. (*Id.*).

Olivia's mother reported the assault to the Dean of Students at UVA on October 25, 2016. (*Id.* at ¶ 48). UVA sent Notices of Investigation under Title IX to both Peabody and Hersey on November 7, 2016. (*Id.* at ¶ 54). The Notices explained Peabody's allegations and the rights, responsibilities, and expectations of the various parties. (*Id.* at ¶¶ 54–55). On January 3, 2017, UVA sent Hersey an Amended Notice of Investigation after UVA's investigation unveiled two additional students who had "substantially similar allegations" as Peabody. (*Id.* at ¶ 56). On March 15, 2017, UVA issued its Final Outcome Letter finding that Hersey had violated UVA's Sexual and Gender-Based Harassment Policy, at which point UVA informed Peabody that Hersey's "employment relationship with the University has ended" and that it had barred Hersey from university grounds. (*Id.* at ¶¶ 56, 58, 59).

In June 2021, Peabody, according to the complaint, "learned for the first time . . . that it was well known in the art and school community that Hersey had been bringing UVA students back to his private studio and sexually harassing them." (*Id.* at ¶ 66). In that same month, she also learned that Hersey was then living in Richmond, Virginia, about an hour away from UVA. (*Id.* at ¶ 60). Finally, also in that month, she learned that UVA had not fired Hersey during the initial Title IX investigation, but had, per the complaint "allowed [him] to resign." (*Id.* at ¶ 58).

Peabody filed the present complaint in November 2021. (Dkt. 1). The complaint pleads six causes of action: (1) discrimination on the basis of gender and sexual orientation in violation of 20 U.S.C. § 1681 (Title IX), (2) pre-harassment violation of Title IX, (3) negligent retention, (4) negligence, (5) violation of Virginia Code §§ 23.1-806 and 23.1-807, and (6) negligent infliction of emotional distress. (*Id.*). Now, UVA moves to dismiss the complaint for being filed after the applicable statute of limitations had run, among other reasons. (Dkt. 7).

## II.  Legal Standard

### A.  Rule 12(b)(1)

Rule 12(b)(1) of the Federal Rules of Civil Procedure enables a party to move for dismissal by challenging a court's subject matter jurisdiction. A court must dismiss a case where the court finds subject matter jurisdiction lacking. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006). The plaintiff bears the burden of proving jurisdiction. *Smith v. Wash. Metro. Area Transit Auth.*, 290 F.3d 201, 205 (4th Cir. 2002). In determining whether subject matter jurisdiction exists, the court must evaluate the allegations in the complaint as "mere evidence," and so may consider evidence outside the pleadings without converting the motion challenging jurisdiction into a summary judgment motion. *Richmond, Fredericksburg & Potomac R.R. Co.*, 945 F.2d 765, 768 (4th Cir. 1991). The court should grant a Rule 12(b)(1) motion to dismiss

"only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).

### B. Rule 12(b)(6)

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a complaint to determine whether a plaintiff has properly stated a claim. The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), with all its allegations taken as true and all reasonable inferences drawn in the plaintiff's favor, *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). A motion to dismiss "does not, however, resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Id.* at 214.

Although the complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A court need not "accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011) (quotation marks omitted). This is not to say Rule 12(b)(6) requires "heightened fact pleading of specifics," instead the plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("only a complaint that states a plausible claim for relief survives a motion to dismiss").

### III. Discussion

#### A. Existence of Private Right of Action Under Count Five

As an initial matter, the Court holds that Peabody has no private right of action under

Virginia Code §§ 23.1-806 and 23.1-807, and will therefore dismiss Count Five. Those code sections set out certain requirements for how universities must handle allegations of sexual assault and harassment. But they do not authorize a private party to enforce alleged violations thereof.

Under Virginia law, "[p]rivate citizens are generally unable to enforce a statute unless a private right of action is provided." *Henderson v. Fairfax-Falls Church Cmty. Serv. Bd.*, 2018 WL 6037522 at *5 (E.D.Va. Nov. 15, 2018), *aff'd* 771 Fed. App'x 205 (4th Cir. 2019) (citing *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001)). As the Virginia Supreme Court has held, "[a] statutory right of action no doubt exists when a statute expressly authorizes it," *Cherrie v. Va. Health Servs., Inc.*, 787 S.E.2d 855, 858 (Va. 2016), but "when a statute . . . is silent on the matter of a private right of action, one will not be inferred unless the General Assembly's intent to authorize such a right of action is 'palpable' and shown by 'demonstrable evidence.'" *Michael Fernandez, D.D.S., Ltd. v. Comm'r of Highways*, 842 S.E.2d 200, 202 (Va. 2020) (quoting *Cherrie*, 787 S.E.2d at 858).

Here, Va. Code §§ 23.1-806 and 23.1-807 do not contain an explicit private right of action, not has any court ever held that they confer one. Nonetheless, Peabody argues that this Court should infer a private right of action because the statute is partially modelled after Title IX, which does contain a private right of action, and because certain language in the statute "is potentially consistent with a private right of action to enforce the obligations stemming therefrom." (Dkt. 12 at 24). But if the Section 23.1 provisions are in fact modelled after Title IX, and Title IX includes a private right of action, then it is a much more likely inference that the General Assembly chose not to include a private right of action in Section 23.1 than it is that the General Assembly modelled Section 23.1 after Title IX, intended Section 23.1 to include a

6

private right of action like Title IX, but nonetheless chose not to make the private right of action explicit.

Indeed, the General Assembly has not hesitated to be explicit when it has intended to create a private right of action. By way of example, Virginia Code § 23.1-510(C) creates a private right of action for students who disagree with an institution's determination of their eligibility for in-state tuition. The Court assumes that if the General Assembly intended to create a similar private right of action under §§ 23.1-806 and 23.1-807, it would have done so.

Therefore, the Court holds that Peabody has no private right of action under those provisions, and will dismiss Count Five.

### B. Statute of Limitations

#### 1. *Applicable Statute of Limitations*

The parties agree, and the Court holds, that Virginia's two-year statute of limitations for personal injury claims applies to all six causes of action pled in the complaint. (*See* Dkt. 7 at 19–20, 25–26 (UVA's argument that the two-year statute of limitation applies to all claims); Dkt. 12 at 2, 11–14 (Peabody's argument that the applicable two-year statute of limitations should be equitably tolled)).

With respect to Peabody's Title IX causes of action, Counts One and Two, a two-year statute of limitations applies because Title IX borrows the relevant state's statute of limitations for personal injury. *See Winnick v. Kanawha Cty. Bd. Of Educ.*, 214 F. App'x 294, 296 n.3 (4th Cir. 2007) ("every circuit to consider the issue has held that Title IX also borrows the relevant state's statute of limitations for personal injury"); *Rouse v. Duke Univ.*, 535 F. App'x 289, 294 (4th Cir. 2013) (applying North Carolina's personal injury statute of limitations to a Title IX claim). Virginia's statute of limitations for personal injury claims is two years. Va. Code. § 8.01-

243(A).

That same two-year statute of limitations applies to Counts Three (negligence), Four (negligent retention), and Six (negligent infliction of emotional distress), each of which seeks to recover for alleged personal injuries. Va. Code. § 8.01-243(A) ("[E]very action for personal injuries, whatever the theory of recovery . . . shall be brought within two years after the cause of action accrues.").

With respect to Count Five, Peabody, as discussed, has no private right of action, but even if she did the two-year statute of limitations would likely apply, because she alleges the same personal injuries as she does in the other five counts. (*See* Dkt. 1 at ¶¶ 112–116).

## 2. Whether the Statute of Limitations Had Run

There is no question that the statute of limitations for each count had run by the time that Peabody filed the present complaint in November 2021. A cause of action accrues when a plaintiff "possesses sufficient facts about the harm done to h[er] that reasonable inquiry will reveal h[er] cause of action." *Nasim v. Warden*, 64 F.3d 951, 955 (4th Cir. 1995) (en banc) (citing *United States v. Kubrick*, 444 U.S. 111, 122–24 (1979). "Once imputed with that knowledge, the plaintiff is on inquiry notice, imposing on h[er] a duty to inquire about the details of negligence that are reasonably discoverable." *Id.*

The statute of limitations under Count One, Peabody's post-harassment Title IX claim, began to run in March 2017, when UVA issued its Final Outcome Letter and apprised Peabody of the details of the investigation, its findings, and its outcome, (Dkt. 1 at ¶¶ 58, 61, 64), because that was the date that Peabody "possess[ed] sufficient facts about the harm done to h[er] that reasonable inquiry [would] reveal h[er] cause of action." *Nasim*, 64 F.3d at 955. By the allegations of the complaint, that was the time when Peabody learned "the extent and duration of

Hersey's conduct." (Dkt. 1 at ¶ 69). Even if the Court applies the latest possible imaginable date for when Peabody's cause of action might have accrued—when she graduated from UVA in August 2019 (*id.* at ¶ 76)—the statute of limitations still would have run by the time she filed the present complaint in November 2021.

The statute of limitations on Count Two, the pre-harassment claim which alleges that UVA maintained a policy of deliberate indifference towards reports of sexual misconduct, which created a heightened risk of sexual harassment and led to Peabody "experience[ing] harassment at the hands of Hersey," began to run on the day of the harassment, October 21, 2016. *See Doe v. Univ. of Tenn.*, 186 F. Supp. 3d 788, 808 (M.D. Tenn. 2016) (holding that a pre-harassment cause of action accrued on the day of the harassment). Therefore, the statute of limitations on Count Two had also long run by the time Peabody filed the present complaint.

The statute of limitations on her state law claims, Counts Three, Four, and Six, had also run by the time she filed the present complaint for substantially the same reasons. Under Virginia law, a cause of action "shall be deemed to accrue and the prescribed limitation period shall begin to run from the date the injury is sustained . . . and not when the resulting damage is discovered." Va. Code § 8.01-230. The harassment occurred on October 21, 2016 (Dkt. 1 at ¶ 34), and UVA notified Peabody of the results of the investigation on March 15, 2017 (*id.* at ¶ 56). On whichever of those dates the statute of limitations on the state law negligence claims began to run, the November 2021 complaint was filed untimely.

Peabody's allegation that she continued to suffer after the initial injury does not alter when the statute of limitations began to run, because "[i]n Virginia, an injury is deemed to occur, and the statute of limitations period begins to run, whenever any injury, however slight, is caused by the negligent act, even though additional or more severe injury or damage may be

subsequently sustained as a result of the negligent act." *Wade v. Danek Med., Inc.*, 182 F.3d 281, 285 (4th Cir. 1999) (cleaned up).

Therefore, each count in the complaint was filed after the applicable statute of limitations had run.

### 3. Equitable Tolling

Although Peabody filed the complaint after the two-year statute of limitations had run, she asks the Court to apply the doctrine of equitable tolling. (Dkt. 7 at 11–17). She argues that the Court should apply equitable tolling for two reasons: first, that UVA concealed certain facts from her (*id.* at 11-14), and second, that her trauma from Hersey's harassment rendered her incapable of filing before the statute of limitations had run (*id.* at 15–17).

To toll a statute of limitations based on fraudulent concealment, "a claimant must establish that (1) the party pleading the statute fraudulently concealed facts which are the basis of a claim, and that (2) the claimant failed to discover those facts within the statutory period, despite (3) the exercise of due diligence." *Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp.*, 828 F.2d 211, 218 (4th Cir. 1987); *see also* Va. Code. § 8.01-229(D) (Virginia's tolling statute). Under Virginia law, the concealment must be affirmative and deliberate. *See Mackey v. McDannald*, 842 S.E.2d 379, 385 (Va. 2020) ("Mere silence by the person liable is not concealment, but there must be some affirmative act or representation designed to prevent, and which does prevent, the discovery of the cause of action.") (quoting *Culpeper Nat. Bank v. Tidewater Improvement Co.*, 89 S.E. 118, 121 (Va. 1916)).

Peabody argues that UVA withheld several particular facts from her: that it knew about Hersey's prior harassment of other UVA students, that Hersey had been permitted to resign rather than being fired, that the Title IX investigation unveiled unauthorized photos of other

young women, and that Hersey had moved to Richmond at some point between the completion of the Title IX investigation and June 2021. (Dkt. 12 at 12).

The only one of those pieces of information that Peabody even pleads UVA made an affirmative act or representation with respect to is how Hersey's employment with UVA had ended. The others are, at most, omissions that cannot possibly give rise to equitable tolling, because "[m]ere silence . . . is not concealment." *Mackey*, 842 S.E.2d at 385. As for the letter that stated that Hersey's employment with the university had ended, while it was an affirmative representation, Peabody has not pled that UVA fraudulently concealed anything. Even granting Peabody the benefit of assuming that the Final Outcome Letter was ambiguous at all,[2] Peabody has only pled, at most, that UVA did not specify something.

Plus, even if UVA had affirmatively concealed how Hersey's employment with UVA had ended, it is not clear that equitable tolling would apply, because Peabody would still have had all the other information relevant to her causes of action. Fraudulent concealment "applies in situations where the defendant has wrongfully deceived or misled the plaintiff *in order to conceal the existence of a cause of action*." *English v. Pabst Brewing Co.*, 828 F.2d 1047, 1049 (4th Cir. 1987) (emphasis added) (internal quotation omitted). Here, Peabody had an abundance

---

[2] And it is not clear that the Final Outcome Letter even was ambiguous. UVA has attached the letter as an exhibit to its motion to dismiss, and, because Peabody does not challenge the authenticity of the letter and heavily relies on it in her complaint, the Court may consider it in ruling on this motion. *See Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (considering document where plaintiff relied on it in the complaint and did not contest its authenticity). The letter does, as Peabody alleges, state that Hersey's "employment relationship with the University had ended," which does not clearly indicate in itself whether he had resigned or been fired, but the letter also indicates that Hersey "elected not to contest the recommending findings" and that he was "not eligible for rehire by the University." (Ex. 1 to Dkt. 7). Most importantly, the letter indicated that the usual next step would be to determine the appropriate sanction against Hersey, but that was not possible because his employment with UVA had ended. (*Id.*). If UVA had not determined whether termination would be the appropriate sanction, then it could probably be inferred that his employment had ended because he had resigned.

of other information that plausibly could have gone towards her Title IX and state law negligence claims—she went through the entire Title IX process within the university, represented by counsel—so in no sense, even taking the allegations in the complaint as true, did UVA conceal the existence of a cause of action.

Peabody also argues that the trauma Hersey caused her rendered her unable to file her complaint within the statutory period. (Dkt. 12 at 15–17). While it is true that in rare cases mental incapacity might toll a statute of limitations, the Fourth Circuit has only considered the possibility in cases of profound mental incapacity. *See Ott v. Maryland Dep't of Pub. Safety and Correctional Serv.*, 909 F.3d 655, 661 n.7 (4th Cir. 2018) (dismissing request for equitable tolling based on PTSD). The facts alleged in the complaint, which notes that after during the statutory period Peabody travelled abroad, graduated from UVA, and began a career (Dkt. 1 at ¶¶ 74, 76) are insufficient to meet that standard.

## IV.  Conclusion

This opinion should be understood to say nothing about the merits of Peabody's claims or about the harm she suffered—it holds only that her complaint is time-barred by the statute of limitations and that she has no private right of action under Count Five.

In an accompanying order the Court will grant UVA's motion to dismiss, Dkt.7, and dispense with the hearing on the motion scheduled for April 29, 2022.

The Clerk of Court is directed to deliver a copy of this opinion to all counsel of record.

Entered this 27th day of April 2022.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE